**PORTEC, INC.**

v.

**The UNITED STATES.**

**Nos. 868–71 and 127–72.**

United States Court of Claims.

Nov. 20, 1974.

William T. Hart, Chicago, Ill., attorney of record, for plaintiff; James M. Van Vliet, Jr., and Schiff Hardin & Waite, Chicago, Ill., of counsel.

Ray Goddard, Washington, D. C., with whom was Asst. Atty. Gen. Carla A. Hills, for defendant.

Before DAVIS, SKELTON and KUNZIG, Judges.

ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DEFENDANT'S CROSS–MOTION FOR PARTIAL SUMMARY JUDGMENT

PER CURIAM:

Plaintiff brought these suits for a redetermination of excessive profits found by the Renegotiation Board to have been received in 1966 and 1967, primarily on contracts for the sale of large rock crushers to the Army and Air Force.

**1280**

The jurisdiction of this court is founded on 50 App.U.S.C. § 1218 (Supp. II, 1972), providing for a de novo determination of the amount, if any, of excessive profits received by the claimant. While plaintiff states several bases on which it asks the court to find that it had no excessive profits, the only issue now before us on the parties' cross-motions for partial summary judgment, see Rule 101(a), is whether plaintiff is entitled to the partial mandatory exemption for "durable productive equipment," 50 App.U.S.C. § 1216(c) (1970), with respect to receipts from the rock crusher sales.[1]

■■■■ The disagreement centers on whether the term "durable productive equipment," defined in the statute as "machinery, tools or other productive equipment which has an average useful life of more than five years," 50 App.U.S.C. § 1216(c)(2)(1970),[2] includes only manufacturing equipment or also covers other large capital equipment used in processing materials. While the Renegotiation Board in Renegotiation Bulletin No. 12, 32 C.F.R. § 1499.2–12 (1974), has since 1967 limited the exemption to strictly manufacturing items, we believe that the legislative history and the Congressional purpose require a broader interpretation.

The "durable productive equipment" exemption as first included in the 1951 Renegotiation Act covered only equipment sold by subcontractors to government contractors who neither included the equipment in the end-product sold to the United States nor acted as its purchasing agent. Renegotiation Act of 1951, ch. 15, § 106(c), 65 Stat. 18 (1951). The rationale for the exemption, as stated in the House and Senate hearings, the Senate report and the floor debates, was that, without a partial exemption, profits from the sale of large machinery purchased by contractors would be completely renegotiable even though the machines would be used on defense or government work only a small part of their useful lives. See Hearings on H.R. 9246 Before the House Comm. on Ways and Means, 81st Cong., 2d Sess. 201 (1950); Hearings on H.R. 1724 Before the Senate Finance Comm., 82d Cong., 1st Sess. 105–06 (1951); S.Rep. No. 92, 82d Cong., 1st Sess. 6–7 (1951); 97 Cong.Rec. 1326, 2254, 2275 (1951). This rationale is equally applicable to all large capital equipment used for processing, a point emphasized during the floor discussion when the Chairman of the Senate Finance Committee, Senator George, stated that the exemption "concerns long-lived machinery, tools and so forth \* \* \*." 97 Cong.Rec. 1326 (1951). This legislative history, plus the broad wording of the Act itself (*i. e.* "durable productive equipment"), makes it clear to us that the exemption was, as passed in 1951, applicable to processing equipment of the kind now before us.[3]

---

1. Section 1216(c)(1) declares that the provisions of the Renegotiation Act "shall not apply to receipts or accruals (other than rents) from contracts or subcontracts for new durable productive equipment, except (A) to that · part of such receipts or accruals which bears the same ratio to the total of such receipts or accruals as five years bears to the average useful life of such equipment as set forth in Bulletin F of the Bureau of Internal Revenue (1942 edition) or, if an average useful life is not so set forth, then as estimated by the Board and (B) to receipts and accruals from contracts for new durable productive equipment in cases in which the Board finds that the new productive equipment covered by such contracts cannot be adapted, converted or retooled for commercial use."

As indicated above, the exemption is limited to an amount which "bears the same ratio to the total \* \* \* receipts or accruals as five years bears to the average useful life of such equipment \* \* \*" 50 App. U.S.C. § 1216(c)(1) (1970).

2. The parties have stipulated that the useful life of the items in this case is 15 years. Defendant does not urge, and the Board did not find, that this equipment cannot be adapted, converted or retooled for commercial use.

3. This equipment is expressly listed in Bulletin F, referred to in the statute, see note 1, *supra.*

And after the adoption of the exemption in 1951, the Renegotiation Board appears to have read it in this way for about a decade and one-half.[4]

The Government argues, however, that the 1954 amendments, Act of Sept. 1, 1954, ch. 1209, 68 Stat. 1116, making the exemption applicable to prime contractors like plaintiff, also narrowed the class of machinery to which the exemption is applicable. The purpose of the 1954 amendment, as expressed in the reports and debates, was to protect manufacturers whose equipment was stockpiled and resold by the Government, thereby reducing the market for future non-renegotiable commercial sales. S. Rep. No. 643, 83d Cong., 1st Sess. 3 (1953), 1954 U.S.Code Cong. & Admin. News, p. 3878; 100 Cong.Rec. 14774 (1954). While the major stockpiling problem at the time was in machine tools, the debate and reports covered "machine tools and other productive equipment." *Ibid.* The purpose of the 1954 amendment, like that of the original exemption, is broad enough to cover more than manufacturing machine tools.[5] And in amending the provision, Congress did not change the definition sec-

tion of the exemption to make it narrower.[6] We can discern no other change in legislative focus which would constrict the Congressional concern from all durable processing or productive equipment to purely manufacturing machinery.[7]

We need not ponder whether the Board's 1967 Bulletin No. 12—limiting for the first time the "productive equipment" exemption to strictly manufacturing items—is entitled to the status of a full-fledged regulation. Even if it is, it cannot stand against the adverse weight of (a) the broad wording of the exemption plus (b) the clear Congressional purpose. In addition, the Bulletin plainly fails to have the cachet either of a contemporaneous construction (it was not adopted until 1967) or of a long-continued consistent interpretation by the administering agency (in the now relevant aspect, the Bulletin reversed a 15 or 16 year policy looking the other way).

For these reasons, we hold that plaintiff is entitled to the partial exemption and its motion to that effect is granted. The Government's countervailing motion is denied. The case is remanded to the trial division for further proceedings consistent with this opinion.

---

4. The Board first adopted a regulation which provided that "machinery, equipment or materials will be deemed to be used in the processing of an end product or an article incorporated in an end product in all cases where such machinery, equipment, or materials are used—(a) *to produce or otherwise operate* directly on an end product or an article incorporated in an end product by chemical, physical or mechanical methods; such, for example, as shaping, cutting, constructing, combining, refining, assembling, testing, inspecting or (in the case of end products) packaging; * * *."
For later, consistent, Board pronouncements in 1955 and 1960, see note 7, *infra.*

5. In this case for example, the defendant has already resold parts of four of plaintiff's machines. Defendant's Answers to Interrogatories, Feb. 3, 1973.

6. The 1954 and 1955 amendments altered the definition section, but in a way not relevant here. See Act of Sept. 1, 1954, ch. 1209 § 4(c), 68 Stat. 1117; Act of Aug. 3, 1955, ch. 499 § 5, 69 Stat. 448. The 1955 modification deleted a reference to "end product" which had been inadvertently allowed to remain in the provision when the 1954 amendment was adopted.

7. In fact the Renegotiation Board, in Bulletins issued in 1955 and 1960, disagreed with defendant's and the Board's present position, stating that the exemption covered items used "to produce or otherwise operate directly on other materials by chemical, physical or mechanical methods" (1955 version) or "to manufacture or process tangible materials" (1960 version). Renegotiation Bulletin No. 23 (Mar. 29, 1955); Renegotiation Bulletin No. 23 (Revised, Aug. 25, 1960).